ANTHONY MANGANO *vs.* ALBERT P. ROONEY *et ux.*

JULY 27, 1950.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This action of the case in assumpsit was brought by a real estate broker to recover his commission for procuring a purchaser for defendants' real estate. At the conclusion of the evidence in the superior court the trial justice directed a verdict for the plaintiff and denied defendants' motion for a directed verdict. The case is here on defendants' exceptions to those rulings.

It appears from the evidence that defendants entered into a written agreement with the plaintiff on September 18, 1947 to retain him as their exclusive agent for sixty days to sell their real estate situate at 28 Winthrop street in the city of Cranston, at the stipulated price of $8200 subject to a commission of 5 per cent of such price to be paid to the plaintiff "immediately after such time as the agreement to sell is made and signed and deposit is received." On October 14, 1947 plaintiff produced Anthony Vellone of Providence as a purchaser and thereupon a written contract was drawn by the plaintiff in which the defendants agreed to sell and the purchaser agreed to buy the real estate for $8200. Defendants and the purchaser signed this contract and the purchaser made a deposit of $400 which was turned over to and accepted by the defendants. Sometime later in October, the precise date is not fixed, it became apparent to all that Vellone was financially unable to perform his contract.

About the time that fact became known or shortly there-
after and before plaintiff's exclusive agency had expired,
he brought Mr. and Mrs. John Mitchell to defendants
and asked that they be permitted to inspect the real estate
as prospective purchasers in place of Vellone. Defendants
refused to permit such inspection and made it quite plain
that they did not want to sell the house. Thereupon plain-
tiff brought the instant suit on the common counts and a
later supplemental count on his written agreement with
the defendants.

While there was some testimony as to the Mitchells
wanting to buy a house in the vicinity of defendants' real
estate for around $8000 it did not definitely appear that
they were customers at $8200 and were able to pay such
sum. In fact in answer to a question by the trial justice
Mr. Mitchell admitted that he was not able to make
such a purchase and was looking for a loan. In our
opinion the defendants' refusal to permit the Mitchells to
inspect the real estate plays no material part in this case
in view of the theory on which it was tried by the plaintiff
and ultimately decided by the trial justice in his favor.
Such decision seems to have been based solely on the fact
that plaintiff had produced Vellone as a purchaser who
had given defendants a deposit and had entered into a
written contract with them to purchase their property.
In other words, the case was decided on the supplemental
count on plaintiff's written agreement with the defendants.
The defendants' exceptions challenge the correctness of the
theory of law upon which the rulings of the trial justice
were based.

Those exceptions raise but one question which may be
stated as follows: Under a broker's agreement which pro-
vides that a certain commission shall be "due and payable
immediately after such time as the agreement to sell is
made and signed and deposit is received," is the broker
entitled to his commission notwithstanding that the pur-
chaser produced by him proves to be financially unable

to purchase in accordance with his contract? Plaintiff contends that his written agreement is to be construed as it reads and that the present defendants upon receiving a deposit from and entering into a written contract of sale with Vellone became obligated to pay the stipulated commission regardless of Vellone's financial ability to perform his contract to purchase. The trial justice apparently adopted that view. In directing the jury to return a verdict for the plaintiff he told them that in his view of the law the broker's agreement "means just what it says * * * ."

There is no evidence in the case at bar that defendants had any previous knowledge of Vellone or that in accepting him as a purchaser they had exercised their independent judgment concerning his financial ability to perform his contract. In such a case defendants contend that the law of this state is that the broker in producing a purchaser implicitly represents that he is ready, willing and *able* to purchase. In support of their contention they rely upon *Butler* v. *Baker,* 17 R. I. 582.

In that case the purchaser, after the defendant had accepted a deposit from him and had entered into a written contract to sell, proved financially unable to perform such contract. The broker, however, claimed his commission on the ground that the defendant's entering into the contract to sell and his acceptance of the purchaser's deposit obligated the defendant to pay the stipulated commission without reference to the purchaser's ability to perform his contract to purchase. This court expressly refused to assent to that proposition. It said that the issue presented by the evidence was "whether it is enough to entitle a broker to his commission that he has produced a person as a purchaser of an estate who is ready and willing to purchase upon the seller's terms, and a contract has been entered into to that effect between the seller and the person produced; or whether it must also appear that the person produced is of sufficient pecuniary ability to make the

purchase." In deciding that issue the court held that in the absence of evidence tending to show that the seller in accepting the purchaser had exercised his independent judgment of the purchaser's pecuniary ability there was an implied representation by the broker that the purchaser was able financially, as well as ready and willing to purchase. And the court found that since the purchaser had proved to be financially irresponsible the broker had not earned his commission "notwithstanding the fact that, in the circumstances mentioned, the defendant entered into a contract with * * * [the purchaser] for the sale of the property."

In our opinion that case closely resembles the case at bar. Here it is not denied that the purchaser is financially unable to perform his contract. He was produced by the plaintiff and, as far as the evidence shows, was accepted by the defendants solely on that account. At least it does not appear in the evidence that they knew the purchaser or exercised their independent judgment concerning his pecuniary ability to purchase. On the contrary the natural and reasonable inference from the evidence is that in entering into the written contract of sale with the purchaser defendants relied upon the plaintiff as their agent.

Here, then, as in the *Butler* case the only question is whether, in the circumstances as above stated, the plaintiff was obligated by his agreement with defendants to produce a purchaser financially able as well as ready and willing to purchase in order to be entitled to demand from the defendants the commission stipulated in the agreement. We think the law and the reasons supporting it as laid down in the *Butler* case govern our determination of that issue. We construe the words of the agreement upon which plaintiff relies as implying an obligation on his part to produce a financially able purchaser. Since the undisputed evidence shows that he has not discharged that obligation he has not earned his commission and the trial justice erred in directing a verdict in his favor. Conversely, he

erred in denying the defendants' motion for a directed verdict.

Before concluding it may be remarked that in the superior court plaintiff relied upon and cited *Cannon* v. *Staples,* 46 R. I. 300, as authority for his position, but we have been unable to find that case cited in the brief which he has filed here. However, we have examined it and find it is not in point. The issue therein was different from the issue in the case at bar. The agreement in question there provided that the broker's commission was to be paid upon delivery of the deed. The seller had accepted a deposit and entered into a written contract to sell to the purchaser, but died before delivery of the deed. The seller's executrix did not question the purchaser's ability to purchase but refused to pay the commission solely because the sale had not been consummated by delivery of the deed. She rested her case on the plaintiff's evidence and moved for a directed verdict which was denied. This court upheld that ruling on the ground that the broker, having produced a purchaser ready, willing and able to purchase, was entitled to his commission unless there was a special agreement to the contrary. The agreement to pay the commission upon the passing of the deed was apparently not deemed by the court such a special agreement. In the course of its opinion the court distinguished the case from the *Butler* case, pointing out that in that case there was a question of the purchaser's pecuniary ability to consummate the purchase.

The defendants' exceptions are sustained. On October 2, 1950 the plaintiff may appear before this court and show cause, if any he has, why the case should not be remitted to the superior court with direction to enter judgment for the defendants.

ON HEARING TO SHOW CAUSE.
OCTOBER 23, 1950.

PER CURIAM. In the above-entitled case, pursuant to the permission given in our opinion heretofore filed, the

330

plaintiff through his attorney appeared to show cause, if any he had, why the case should not be remitted to the superior court for entry of judgment for the defendants as therein directed; and he presented reasons in support of his contention that the case should be remitted for a new trial.

Upon consideration we are of the opinion that no sufficient cause has been shown to change our conclusions, and the case is remitted to the superior court for entry of judgment for the defendants as directed in the opinion.

*Kirshenbaum & Kirshenbaum,* for plaintiff.

*Goldberg & Goldberg, Philip B. Goldberg, Joseph Palmieri,* for defendants.